# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2031

_____

Patricia Wagner

*Plaintiff - Appellant*

v.

Kevin Campbell, individual capacity

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 12, 2014
Filed: March 4, 2015

_____

Before RILEY, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Patricia Wagner worked at the Merrick County, Nebraska, sheriff's office from 1974 to 2011. She left her job after receiving a written reprimand from Sheriff Kevin Campbell. Wagner sued Campbell in state court under 42 U.S.C. § 1983 and Neb. Rev. Stat. § 20-148, alleging she suffered an adverse employment action in retaliation for her protected speech on a matter of public concern, in violation of the United States and Nebraska constitutions. Upon removal, see 28 U.S.C. §§ 1441(a), 1446(b),

the district court[1] denied Wagner's motion for remand and granted Campbell's motion for summary judgment, finding Campbell had not violated Wagner's constitutional rights. Wagner appeals. With appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND
### A.    Facts

The following facts are undisputed except as noted. For over thirty years, Patricia Wagner worked at the Merrick County sheriff's office, serving as the chief dispatcher and office manager. Wagner "handl[ed] bond money[,] office records and receipts for the bond payments," "maintain[ed] the checking account ledger," and "ke[pt] the office ledger . . . show[ing] all bond money received and paid out." During this time, "the office policy" dictated that "bond money . . . posted for an inmate" would be "deposited into the [s]heriff's office checking account," and the sheriff's office would then issue a check to the court. Wagner believed "depositing bond payments into the office [checking] account . . . created a 'tracking mechanism' [that] showed [the] bond funds had been cashed, processed and paid to the court."

Campbell was appointed acting sheriff on August 1, 2010, and sheriff in January 2011. Around January 10, 2011, Campbell told Wagner "he wanted her to train another employee to perform her job duties" "so that someone else could do the job in her absence." Sometime later that month, Campbell "expressed [his] concerns to Wagner that she was not training another employee . . . as he had requested." Wagner thought the training period would have to be longer than Campbell expected.

Campbell also "informed Wagner that he had received a complaint from the county judge about delays in depositing bond money with the court." Campbell told

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

Wagner "he wanted to change the office policy" to have bond money "taken directly to the court," rather than deposited in the sheriff's office checking account. "Wagner recalled discussing the change" with "Campbell 'a couple of times,'" "either in the dispatch office or in . . . Campbell's office [with] no one other than Campbell and Wagner . . . directly involved." Wagner "guess[ed]" this was because she was "the one who was primarily going to be the person responsible for implementing those changes." Wagner testified she expressed her concerns about the policy change to Campbell—she "felt it would lose our paper trail and that a bond could get lost or not get to the court like it should and then we would end up being responsible." Campbell told Wagner he still wanted to implement his new policy.

Campbell testified that on January 18, 2011, he looked for but could not find the office checkbook. "The next day Campbell asked Wagner about the missing" checkbook. Wagner denied taking it home. Wagner's answer "did not satisfy Campbell."

On January 26, 2011, Campbell "called Wagner into his office" and "presented her with a written reprimand." The reprimand stated Wagner failed to follow Campbell's directives and was insubordinate. Specifically, the reprimand reported: there had been "chronic" problems "with the court not receiving proper documentation" regarding payroll and bonds; Wagner had not trained another employee as directed; Wagner's family member spent time in the office, "degrading the office in conversations," which was "not acceptable"; after Campbell announced the new office policy, the checkbook and related materials "were removed from the office"; Wagner stated Campbell's new policy was "'not going to happen'"; Wagner called the county judge "a liar"; and the day before, Wagner had not shown up for work and instead attended a funeral without informing Campbell. The reprimand concluded Wagner must "comply completely with all directives given to her verbally or in writing by [Campbell], not in part or as she sees fit, completely as directed."

Wagner read the reprimand "two or three times." Wagner "refused to sign the reprimand because she claimed the reprimand contained [false] information." She asked Campbell if she could respond, and Campbell said she could. Wagner went to another area in the office and soon began typing a response on the computer. But Wagner was emotionally upset, so she deleted the response from the computer. After making a copy of the reprimand, Wagner returned the original to Campbell, told him she was leaving, picked up her bag and coat, and walked home. Wagner never returned to work at the Merrick County sheriff's office.

Wagner "understood that the reprimand would be placed in her personnel file and that after a year she could ask that it be removed." Wagner also understood the reprimand did not terminate her employment or affect her pay. Campbell "did not tell [Wagner] to leave[,]" "did not tell her she was fired[,]" "did not ask her to turn in her uniform[,]" "did not tell her not to come back[,]" and "did not [tell her to] contact the County Clerk to get her sick leave, vacation pay and final pay determined."

Wagner prepared a grievance and filed it with the Merrick County clerk. The grievance was "based on" alleged "[a]ge discrimination" and requested "[r]einstatement of job" and "lost wages and benefits." Although "Wagner testified that she thought that Campbell issued the written reprimand to her in retaliation for her having expressed concerns to him about his changes to the bond policy," Wagner did not complain about the alleged retaliation in the grievance. The Merrick County Board of Supervisors (board) denied Wagner's grievance.

B.     Procedural History

Wagner initially sued Campbell and seven members of the board (supervisors) (collectively, defendants), all in their individual and official capacities, in Hall County, Nebraska, District Court. On October 29, 2012, Wagner asked the Hall County clerk to serve all defendants in their official and individual capacities. Wagner effected service on the eight defendants in their individual capacities between

November 2-5, 2012. On December 26, 2012, the Hall County District Court transferred the case to the Merrick County, Nebraska, District Court. Wagner did not effect service on the defendants in their official capacities in either court.

On January 9, 2013, with the consent of the defendants in their individual capacities, the defendants in their official capacities filed a notice of removal in the United States District Court for the District of Nebraska. Wagner moved to dismiss all defendants in their official capacities and moved for remand. Wagner then moved to dismiss the claims against the supervisors as individuals and filed an amended complaint against Campbell only, as an individual. Upon the recommendation of the magistrate judge,[2] the district court granted Wagner's motions to dismiss and denied her motion to remand.

Campbell moved to dismiss the amended complaint. The district court dismissed two of Wagner's four claims. Campbell then moved for summary judgment on the two remaining retaliation claims, which the district court granted, finding no constitutional violation. Wagner appeals the denial of her motion to remand and the grant of summary judgment.

## II.  DISCUSSION
### A.  Motion to Remand

"The notice of removal of a civil action . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action . . . is based." 28 U.S.C. § 1446(b)(1). The defendants filed a notice of removal with the district court more than thirty days after they had been served in state court as individuals, but before they had been served as officials. Wagner moved to remand, claiming the

---

[2]The Honorable Cheryl R. Zwart, United States Magistrate Judge for the District of Nebraska.

-5-

notice of removal was untimely. The district court denied the motion to remand, concluding the defendants' notice was timely filed.

We decline to review the district court's decision on the motion to remand because we take careful note that jurisdiction would have existed in the district court from the inception of this 42 U.S.C. § 1983 suit. See, e.g., Caterpillar Inc. v. Lewis, 519 U.S. 61, 64 (1996) ("We hold that a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered."); Buffets, Inc. v. Leischow, 732 F.3d 889, 896, 898 (8th Cir. 2013) (accepting "jurisdiction over [an] appeal under the rationale of Caterpillar" because "whether or not the statutory defect at issue concerns the presence of complete diversity at the time of removal, the content of the notice of removal, or (as here) both, the same 'considerations of finality, efficiency, and economy' overwhelm the considerations that favor remanding where the case has proceeded to judgment" (quoting Caterpillar, 519 U.S. at 75)).

## B. Motion for Summary Judgment[3]

"We review de novo a district court's grant of summary judgment." Rester v. Stephens Media, LLC, 739 F.3d 1127, 1130 (8th Cir. 2014). Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

---

[3]Wagner's claim that Campbell violated her rights guaranteed by article I, section 5 of the Nebraska Constitution are analyzed using the same rubric as her federal First Amendment claim. See State ex rel. Lemon v. Gale, 721 N.W.2d 347, 360 (Neb. 2006) (per curiam) ("The parameters of the constitutional right to freedom of speech are the same under both the federal and the state Constitutions.").

-6-

Campbell moved for summary judgment on the basis of qualified immunity. "In § 1983 claims, qualified immunity shields government officials from liability and the burdens of litigation unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." Carpenter v. Gage, 686 F.3d 644, 648 (8th Cir. 2012) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Campbell is entitled to qualified immunity unless Wagner is able to "produce sufficient evidence to create a genuine issue of fact as to whether [Campbell] violated a clearly established right." Id. "A mere 'scintilla of evidence' is insufficient to defeat summary judgment, and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 820 (8th Cir. 2010) (internal citation omitted) (quoting Anderson, 477 U.S. at 252).

Wagner contends the district court erred in dismissing her retaliation claims.[4] We analyze such claims "under a burden shifting framework which requires [Wagner] to establish a prima facie case of retaliation by showing that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection existed between the two." Butler v. Crittenden Cnty., Ark., 708 F.3d 1044, 1050-51 (8th Cir. 2013). In this case, we decline to evaluate whether Wagner engaged in protected activity, because we find she did not suffer an adverse employment action.

---

[4]Wagner did not plead a constructive discharge claim in her amended complaint. However, Wagner resisted summary judgment by attempting to introduce a constructive discharge claim, and the district court considered the claim in its summary judgment order. Before this court, Wagner does not argue she was constructively discharged, and we consider the claim abandoned, if it were properly raised below. See Freitas v. Wells Fargo Home Mortg., Inc., 703 F.3d 436, 438 n.3 (8th Cir. 2013) ("Appellants do not raise the issue . . . in their briefs; therefore, they have abandoned that claim.").

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007) (internal marks and quotations omitted). Wagner "need not prove that [s]he was terminated to demonstrate an adverse action; however 'not everything that makes an employee unhappy is an actionable adverse action.'" Duffy v. McPhillips, 276 F.3d 988, 991-92 (8th Cir. 2002) (quoting Bechtel v. City of Belton, 250 F.3d 1157, 1162 (8th Cir. 2001)). "'Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not' rise to the level of an adverse employment action." Clegg, 496 F.3d at 926 (quoting Higgins v. Gonzales, 481 F.3d 578, 584 (8th Cir. 2007) (abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031, 1058 (8th Cir. 2011))). "Lesser actions than demotion, suspension, and termination can be adverse employment actions if their cumulative effect causes an employee to suffer 'serious employment consequences' that adversely affect or undermine h[er] position." Shockency v. Ramsey Cnty., 493 F.3d 941, 948 (8th Cir. 2007) (quoting Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997)).

For example, in Kim, this court found an adverse employment action:

What happened to Kim was much more disruptive than a mere inconvenience or an alteration of job responsibilities or changes in duties or working conditions that cause no materially significant disadvantage. Kim's duties had been reduced; he received much lower performance evaluations than he had received before filing his employment discrimination charge; he was required to undergo special remedial training. There was also evidence that Nash Finch had "papered" his personnel file with negative reports, including two written reprimands. These are the kind of serious employment consequences that adversely affected or undermined Kim's position, even if he was not discharged, demoted or suspended.

Kim, 123 F.3d at 1060 (internal citations, quotation, and alterations omitted). In other words, Wagner must establish "'a reasonable employee would have found her employer's retaliatory action *materially* adverse.'" Rester, 739 F.3d at 1132 (emphasis added) (quoting Wilkie v. Dep't of Health & Human Servs., 638 F.3d 944, 955 (8th Cir. 2011)).

Wagner "suffered no termination, cut in pay or benefits, or changed job duties or responsibilities." Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs., 728 F.3d 800, 805 (8th Cir. 2013). Unlike the situation in Kim, Wagner received only a single reprimand, and she testified that no repercussions were to follow the reprimand, other than having it in her file for one year. Wagner asked Campbell if she could respond to the reprimand, and Campbell told her she could. She did not do so and left work instead.

"A reprimand is an adverse employment action only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse." Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1058 (8th Cir. 2007). When a reprimand does not affect the terms and conditions of a plaintiff's employment, she "cannot make out a prima facie case" of retaliation. Id. Although Wagner contends the reprimand contained false statements, Wagner cannot establish the reprimand, by itself, was a materially adverse employment action when it did not result in any change in the terms or conditions of her job.

Because Wagner did not establish a prima facie case of retaliation, she failed to show a "genuine issue for trial," Anderson, 477 U.S. at 256, as to whether Campbell violated her constitutional rights. The district court properly granted summary judgment and dismissed Wagner's amended complaint.

## III. CONCLUSION

We affirm.

_____