# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-1436

———————————————

Carlo W. Obregon; Samuel Waters

*Plaintiffs - Appellants*

v.

Capital Quarries Company, Inc., owned or held by Farmer Holding Company, Inc.

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

——————————

Submitted: December 29, 2020
Filed: January 15, 2021
[Unpublished]

——————————

Before GRUENDER, ERICKSON, and GRASZ, Circuit Judges.

——————————

PER CURIAM.

Carlo Obregon and Samuel Waters appeal following the district court's[1] adverse grant of summary judgment in this employment action in which they claim

---

[1]The Honorable D. P. Marshall, Jr., Chief United States District Judge for the Eastern District of Arkansas.

their former employer, Capital Quarries Co., Inc. (CQ), discriminated and retaliated against them on the basis of religion and national origin, in violation of, inter alia, their constitutional rights, the Equal Pay Act (EPA), and Title VII.[2] Under careful de novo review, and viewing the evidence in the light most favorable to the plaintiffs, see Banks v. John Deere & Co., 829 F.3d 661, 665 (8th Cir. 2016) (standard of review), we agree with the district court that there is no genuine issue of material fact and that CQ is entitled to judgment as a matter of law.

Specifically, we conclude that Obregon and Waters failed to establish a constitutional claim, because there was no indication that CQ was a state actor or participated in joint activity with a state actor. See Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001) (only state actors can be held liable under 42 U.S.C. § 1983; private party who willfully participates in joint activity with state or its agents is considered state actor). We also conclude that Obregon failed to establish a claim under the EPA, because he did not demonstrate a pay discrepancy on the basis of sex. See Tenkku v. Normandy Bank, 348 F3d 737, 740-41 n.2 (8th Cir. 2003) (to establish prima facie EPA claim, plaintiff must show sufficient evidence that employer paid different salaries to men and women for equal work under similar conditions). And, even assuming Obregon and Waters established a prima facie case that CQ failed to accommodate their requests to have Saturdays off to practice their religion, we conclude it was beyond genuine dispute that their requests were denied because CQ would have incurred an undue hardship, given its consistent statements that it could not feasibly operate its facility during its busiest time of year if they were not scheduled for at least some Saturdays. See Tabura v. Kellogg USA, 880 F.3d 544, 549-51, 557-58 (10th Cir. 2018) (if plaintiff establishes prima facie case of failure to accommodate, burden shifts to employer to show it

---

[2]Obregon and Waters also named another defendant and raised additional claims, which they do not address in their opening brief. See Montin v. Moore, 846 F.3d 289, 295 (8th Cir. 2017) (claims not raised in opening brief are waived).

provided reasonable accommodation or that it could not offer reasonable accommodation without undue hardship; employer incurs undue hardship when it must bear more than de minimis cost to give plaintiff Saturdays off; any cost in wage or expenditure that is more than de minimis is undue hardship); cf. TWA v. Hardison, 432 U.S. 63, 80, 84-85 & n.15 (1977) (explaining that, where employer did not have enough employees volunteer to work Saturdays, requiring company accommodate religious employee's desire to have Saturdays off by either paying other employees overtime or by abandoning its seniority system was more than de minimis cost).

Furthermore, we conclude Obregon and Waters failed to show CQ retaliated against them, because they failed to establish a causal connection between any protected activity and an adverse employment action. See Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006) (to show prima facie case of retaliation, plaintiff must demonstrate (1) he engaged in protected activity, (2) he suffered adverse employment action, and (3) there was causal connection between activity and employment action). Although Waters asserted that his suspension without pay was retaliatory, the evidence in the record established that the suspension occurred before he engaged in protected activity. See Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 985 (8th Cir. 2011) (to establish causal connection between protected conduct and retaliatory action, plaintiff must show conduct was determinative factor in employer's adverse employment action). Obregon and Waters also asserted their terminations were retaliatory, but the record established their terminations resulted from an independent investigation into safety violations, and the record contradicted their assertion that their supervisor set them up for termination. See Staub v. Proctor Hosp., 131 S. Ct. 1186, 1190-91, 1193-94 (2011) (if employer's investigation results in adverse action for reasons unrelated to supervisor's biased action, employer is not liable).

In addition, we conclude Obregon and Waters failed to show a genuine dispute as to whether CQ's legitimate reasons for the adverse employment actions were pretext for discrimination based on Obregon's national origin or Waters's association

with him. See Schaffhauser v. UPS, 794 F.3d 899, 904 (8th Cir. 2015) (plaintiff may show material question of fact regarding pretext by demonstrating that employer's explanation has no basis in fact, that employer was more likely motivated by prohibited reason, that employer failed to follow its own policies, that employer treated similarly situated employees in disparate manner, or that employer shifted its explanation of employment action). Moreover, while Obregon alleged he was paid less than white employees, he failed to show he was similarly situated to any such employee. Cf. Fields v. Shelter Mut. Ins. Co., 520 F.3d 859, 864 (8th Cir. 2008) (plaintiff must show similarly situated employees outside plaintiff's protected class were treated differently; test requires other employees be similarly situated in all relevant aspects).

Finally, we conclude that no genuine dispute exists as to Obregon's hostile-work-environment claim based on his national origin. See Rickard v. Swedish Match N. Am., Inc., 773 F.3d 181, 184-85 (8th Cir. 2014) (to establish hostile-work-environment claim, plaintiff must prove (1) he belonged to protected group; (2) he was subjected to unwelcome harassment based on membership in that group; (3) the harassment affected a term, condition, or privilege of employment, (4) employer knew or should have known of harassment, and (5) employer failed to take proper action); Moses v. Dassault Falcon Jet-Wilmington Corp., 894 F.3d 911, 922-23 (8th Cir. 2018) (merely rude or unpleasant conduct is insufficient to affect terms and conditions of employment); Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 614-15, 617-18 (8th Cir. 2007) (antagonistic behavior and pranks not sufficient to establish hostile work environment); Singletary v. Mo. Dept. of Corr., 423 F.3d 886, 893 (8th Cir. 2005) (racial slurs alone do not render work environment hostile).

Obregon and Waters also appeal the district court's denial of their motion to alter or amend the judgment. Because we have determined that summary judgment was appropriate, we conclude that the district court did not abuse its discretion in

declining to set aside that judgment. <u>See</u> <u>Flannery v. Trans World Airlines, Inc.</u>, 160 F.3d 425, 428 (8th Cir. 1998).

Accordingly, we affirm. <u>See</u> 8th Cir. R. 47B.
_____