# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3050

_____

Pamela Cole

*Plaintiff - Appellant*

v.

Group Health Plan, Inc., doing business as HealthPartners, a Minnesota non-profit corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 1, 2024
Filed: June 28, 2024

_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Pamela Cole brought religious discrimination claims under Title VII and the Minnesota Human Rights Act ("MHRA") against her employer Group Health Plan, Inc. d/b/a/ HealthPartners ("HealthPartners"). Cole asserts HealthPartners failed to reasonably accommodate her religious objections to its vaccine mandate and subjected her to restrictions that visibly differentiated her from vaccinated employees. HealthPartners successfully moved to dismiss Cole's complaint for

-1-

failure to state a claim.  Cole timely appealed.  Because Cole plausibly pled a claim of disparate treatment, we reverse.

## I.     BACKGROUND

We take the facts from Cole's complaint.  Cole is a physical therapist and certified wound specialist who has worked for HealthPartners and its predecessor companies for 25 years.  She has received substantial positive feedback on her job performance from HealthPartners.

In response to the COVID-19 pandemic, HealthPartners implemented a vaccine mandate for all employees in August 2021.  Employees could request religious or medical exemptions to the mandate, subject to conditions. HealthPartners required employees with religious and medical exemptions to always wear a medical grade mask while working in any HealthPartners facility, wear additional personal protective equipment as appropriate, and agree to reassignment to a different patient care area or other work setting.  Employees granted religious exemptions were also required to disclose their vaccination status and the status of their exemption request to their superiors.  In contrast, vaccinated employees were given orange badge locks that allowed them to remove their masks in administrative facilities and non-patient care areas of HealthPartners' hospitals and clinics.

Cole is a member of the Eckankar religion and has sincerely held religious beliefs that prevent her from getting the COVID-19 vaccination.  She requested a religious accommodation allowing her to continue working unvaccinated as she did during the prior year and a half of the pandemic.  HealthPartners exempted Cole from the vaccine mandate but rejected her request to be exempt from the conditions. It also refused to engage in an interactive process with Cole about the conditions.

Cole alleged in her complaint that the orange badge locks constituted a public indication of vaccination status and together with the masking requirements were intended to single out the unvaccinated and make them the subject of scorn, ridicule,

and embarrassment. Cole further alleged that since vaccinated employees could tell who had an exemption, they frequently criticized their unvaccinated colleagues and blamed them for having to mask up in their presence. To avoid uncomfortable situations, Cole attended meetings via Zoom instead of in person.

Cole filed a charge of discrimination with the Equal Employment Opportunity Commission and obtained a right-to-sue letter. She brought the underlying lawsuit, alleging, in relevant part, religious discrimination under Title VII and the MHRA. The district court granted HealthPartners' motion to dismiss. This appeal followed.

## II.   DISCUSSION

We review a district court's dismissal of a complaint *de novo*, accepting the factual allegations as true and granting all reasonable inferences in favor of the non-moving party. Norgren v. Minn. Dep't of Human Servs., 96 F.4th 1048, 1054 (8th Cir. 2024). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Cole appeals the dismissal of her religious discrimination claims arising under Title VII and the MHRA. Since Minnesota courts have interpreted the MHRA using Title VII standards, e.g., Sigurdson v. Isanti Cnty., 386 N.W.2d 715, 719 (Minn. 1986), we follow the same analysis for both claims.

Cole's complaint asserts two theories of liability: (1) religious discrimination (also known as "disparate treatment") and (2) failure to accommodate. A failure to accommodate, while actionable, is not a freestanding cause of action under Title VII. See EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 771-73 (2015) (explaining the only two causes of action under Title VII are disparate treatment and disparate impact and analyzing an employee's failure to accommodate claim as a disparate treatment claim); see also EEOC v. N. Memorial Health Care, 908 F.3d 1098, 1102 (8th Cir. 2018). Any inquiry as to whether HealthPartners offered Cole

a reasonable accommodation or would suffer an undue hardship by accommodating Cole is generally not appropriately considered at the motion to dismiss stage. For this reason, we decline to address HealthPartners' arguments on these issues, and instead analyze Cole's allegations in the context of a disparate treatment claim.

"To establish a prima facie case of religious discrimination, a plaintiff must show: (1) she is a member of a protected class because of her religious beliefs, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 887 (8th Cir. 2015). Although Cole need not allege facts establishing a prima facie case of religious discrimination at the pleadings phase, the elements are relevant to the plausibility of her allegations. Warmington v. Bd. of Regents of the Univ. of Minn., 998 F.3d 789, 796 (8th Cir. 2021).

With respect to the first element, Cole alleged that she is a practitioner of the Eckankar religion and has sincerely held religious beliefs that prohibit her from receiving the COVID-19 vaccination. HealthPartners maintains that Cole has no religious objection to the accommodation it offered her, but this argument is relevant to the reasonableness of the accommodation, not to whether she is a member of a protected class. Cole also alleged that she received positive feedback from HealthPartners regarding her job performance, which is sufficient to satisfy the second element of the prima facie case.

The parties dispute the third element—whether Cole sufficiently alleged an adverse employment action. An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment. See Muldrow v. St. Louis, 144 S. Ct. 967, 974 (2024); see also 42 U.S.C. § 2000e-2(a). The Supreme Court recently obviated the requirement—replete in our case law[1]—

---

[1]E.g., Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013) ("An adverse employment action is defined as a tangible change in

-4-

that the claimed injury be "significant," "material," or "serious." Muldrow, 144 S. Ct. at 975 n.2. After Muldrow, Cole is only required to plead "some harm respecting an identifiable term or condition of employment." Id. at 974.

Cole alleged that HealthPartners' badge lock requirement was designed to publicly identify her vaccination status and to subject her to scorn and ridicule. She alleged this led to frequent criticism from her vaccinated co-workers and that she began attending meetings on Zoom instead of in person to avoid uncomfortable situations. She also alleged that she was reassigned to different patient care areas or work settings. Whether these changes resulted in "some harm" to a term or condition of Cole's employment requires further factual development. In addition, the denial of a requested religious accommodation absent a showing of undue hardship may itself constitute an adverse action,[2] and Cole alleged that HealthPartners refused to consider her request to be exempt from these restrictions despite working unvaccinated for a year and a half prior to the mandate. Dismissal of the complaint on the basis of no adverse action is improper at this stage of the proceedings. See Patrick v. Henderson, 255 F.3d 914, 916 (8th Cir. 2001) (finding that "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution").

---

working conditions that produces a material employment disadvantage[.]"); Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 926 (8th Cir. 2007) ("Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.") (internal quotation marks omitted).

[2]See N. Memorial Health Care, 908 F.3d at 1103 (explaining that an employee whose religious accommodation request is denied may bring a disparate treatment claim under Title VII); Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004); Billings v. Murphy, No. 22-2010-CV, 2024 WL 444727, at *3 (2d Cir. Feb. 6, 2024); see also EEOC v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 614 n.5 (9th Cir. 1988).

With regard to the fourth element, the facts alleged in the complaint plausibly raise an inference of discrimination. The failure to reasonably accommodate an employee's religious practices and singling out religious adherents for inequitable treatment both constitute religious discrimination under Title VII. Abercrombie, 575 U.S. at 775. While HealthPartners contends that Cole has not alleged she was treated differently from similarly situated employees who do not share her religious beliefs since unvaccinated employees with medical exemptions were subject to the same restrictions, we must grant all reasonable inferences in Cole's favor and cannot assume at this early juncture that religious discrimination did not occur because one subset of potential comparators also faced disparate treatment. See Norgren, 96 F.4th at 1056 (explaining that courts generally do not inquire about comparators until summary judgment).

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

_____