# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1914
_____

Petra Brokken

*Plaintiff - Appellant*

v.

Hennepin County

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 12, 2025
Filed: June 5, 2025
_____

Before LOKEN, BENTON, and STRAS, Circuit Judges.
_____

BENTON, Circuit Judge.

Petra Brokken sued her employer—Hennepin County—alleging discrimination based on religion in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) and the Minnesota Human Rights Act (Minn. Stat. § 363A.01 *et seq*) (MHRA), and wrongful discharge in violation of Minnesota's Refusal of Treatment statute (Minn. Stat. § 12.39). The district court dismissed the claims, ruling that (1) Brokken failed to plead an adverse employment action, (2)

she failed to plausibly plead religious beliefs that conflict with the County's Covid-19 policy, (3) the MHRA does not provide a cause of action for failure to accommodate religious beliefs, and (4) § 12.39 does not create a private right of action. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

## I.

This court states the facts as set out in Brokken's complaint. Hennepin County required all employees to receive the Covid-19 vaccine or test weekly during the pandemic. Brokken requested a religious exemption from vaccination and testing. After initially granting an accommodation, the County revised its policy and told Brokken that "if she did not test she would be terminated" and "if she was terminated for refusing to test, the termination would be a specific type of termination, where it would be likely that she would lose such benefits as her banked vacation time, sick time, and comp time." Brokken had accrued over 1,285 hours. She believed a coworker had been terminated without benefits. She "retired under duress."

Brokken sued, alleging religious discrimination in violation of Title VII and the MHRA, and wrongful discharge in violation of § 12.39, among other claims. Her complaint alleged:

- "Plaintiff Brokken has deeply held and sincere spiritual beliefs that include the sanctity of her right to privacy, personal autonomy, and bodily integrity. Her beliefs are comprehensive and order her life like a religion orders the lives of people who believe in God and traditional religions."

- "Her beliefs guide her in pondering the deep issues of life. She believes that she must treat her body as Temple, and each person has the right to choose what he or she will put into their body, based on free will. She strives to control what she puts into her body, and assiduously attempts to keep toxins out of her body. She does not take pharmaceutical products. Her firmly held beliefs in the energetic connectedness of the

-2-

universe do not allow her to receive an injection of the COVID-19 vaccines."

- "Plaintiff Brokken is also opposed to COVID-19 testing because her religious beliefs do not allow her to provide her DNA or other biological materials by force or coercion. The use and possession of her biological materials has been granted to her by her Creator. The COVID-19 testing process involves transporting her material— objectionable for the above reasons—or mixing her biological materials with serum taken from fetal bovines (calves). The process of obtaining the fetal bovine serum is performed through placing an 8 inch needle into the heart of a fetal calf and draining the fluids, without pain relief, in essence torture of calves, which violates her sincerely held beliefs."

The district court granted the County's motion to dismiss for failure to state a claim. Brokken appeals the dismissal of her religious discrimination claims.

"This court reviews de novo a 12(b)(6) dismissal." *Kale v. Aero Simulation, Inc.*, No. 23-3380 (8th Cir. June 5, 2025), *quoting* *Ringhofer v. Mayo Clinic*, 102 F.4th 894, 898 (8th Cir. 2024). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

## II.

Each of Brokken's claims (Title VII, MHRA, and § 12.39) require that she experience an adverse employment action. *See* *Jones v. TEK Indus.*, 319 F.3d 355, 359 (8th Cir. 2003) (Title VII religious discrimination claim requires an adverse employment action); *Henry v. Indep. Sch. Dist. No. 625*, 988 N.W.2d 868, 883

(Minn. 2023) (MHRA disparate treatment claim requires an adverse employment action); **Borgersen v. Cardiovascular Sys., Inc.**, 729 N.W.2d 619, 624 (Minn. Ct. App. 2007) (wrongful discharge claim requires an adverse employment action). Most importantly, "[d]ismissal of the complaint on the basis of no adverse action is improper at this stage of the proceedings." **Cole v. Grp. Health Plan, Inc.**, 105 F.4th 1110, 1114 (8th Cir. 2024), *citing* **Patrick v. Henderson**, 255 F.3d 914, 916 (8th Cir. 2001) (holding that "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution"). "An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment." **Id.**, *citing* **Muldrow v. St. Louis**, 601 U.S. 346 (2024). A plaintiff "is only required to plead 'some harm respecting an identifiable term or condition of employment.'" **Id.**, *quoting* **Muldrow**, 601 U.S. at 355. The harm need not be "significant," "serious," "substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." **Muldrow**, 601 U.S. at 355. "Title VII's text nowhere establishes that high bar." **Id.** at 350.

Brokken pled she "retired under duress." The Country told her they would terminate her for refusing to test, and it "would be a specific type of termination, where it would be likely that she would lose such benefits as her banked vacation time, sick time, and comp time." Brokken had banked more than 1,285 hours. The threat of losing compensation for those hours—no matter the amount—was a "disadvantageous change." **Cole**, 105 F.4th at 1114.

Still, the County argues Brokken had to meet a higher standard for constructive discharge, which she failed to meet. In any event, Brokken meets the standard. "[A] plaintiff must show: (1) 'he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign,' and (2) 'he actually resigned.'" **Norgren v. Minnesota Dep't of Hum. Servs.**, 96 F.4th 1048, 1056 (8th Cir. 2024), *quoting* **Green v. Brennan**, 578 U.S. 547, 555, 560 (2016) ("We do not also require an employee to come forward with proof . . . that not only was the discrimination so bad that he had to quit, but also that his quitting was his employer's plan all along."). The first element

is an objective standard that considers of "all of the attendant circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Brokken alleges she faced a choice between violating her sincerely held religious beliefs by complying with the testing requirement and termination, which would mean the likely loss of significant accrued benefits. A reasonable person would have felt compelled to resign. And, Brokken actually resigned, satisfying the second element. Brokken plausibly pled constructive discharge.

## III.

Brokken asserts religious discrimination (also called "disparate treatment") and failure to accommodate under Title VII. "A failure to accommodate, while actionable, is not a freestanding cause of action under Title VII." *Cole*, 105 F.4th at 1113, *citing* ***EEOC v. Abercrombie & Fitch Stores, Inc.***, 575 U.S. 768, 771–73 (2015) (explaining the only two causes of action under Title VII are disparate treatment and disparate impact, and analyzing an employee's failure to accommodate claim as a disparate treatment claim). "Any inquiry as to whether [defendant] offered [plaintiff] a reasonable accommodation or would suffer an undue hardship by accommodating [plaintiff] is generally not appropriately considered at the motion to dismiss stage." *Id.* The reasonableness of accommodations "is a question for the jury because it turns on fact-intensive issues." ***Sturgill v. United Parcel Serv., Inc.***, 512 F.3d 1024, 1033 (8th Cir. 2008). Thus, this court analyzes only whether Brokken sufficiently alleges disparate treatment. *See Cole*, 105 F.4th at 1113 (declining to address plaintiff's reasonable accommodation arguments, and instead analyzing plaintiff's "allegations in the context of a disparate treatment claim").

The district court dismissed Brokken's Title VII claims, ruling she failed to plead a sincerely held religious belief that conflicted with the County's vaccination and testing requirement. "To survive a motion to dismiss, plaintiffs must

'adequately identify religious views they believe to conflict with' the employer's policy." ***Kale***, No. 23-3380 at 4, *quoting **Ringhofer***, 102 F.4th at 901. "[B]eliefs do not have to be uniform across all members of a religion or 'acceptable, logical, consistent, or comprehensible to others.'" ***Ringhofer***, 102 F.4th at 901, *quoting **Thomas v. Review Bd. of Ind. Empl. Sec. Div.***, 450 U.S. 707, 714 (1981). "By connecting their objection to testing to specific religious principles . . . [plaintiffs] satisf[y] their burden at [the pleading] stage." ***Id.*** at 902 (allowing plaintiffs' claims to proceed because they connected their religious objection to unnecessary medical procedures to their employer's requirement that they subject to such procedures). *Accord **Kale***, No. 23-3380 at 5 (distinguishing plaintiff who did not connect his religious objection to intrusions into the body to his employer's testing procedures, which did not necessarily intrude into the body).

Brokken's complaint connects her objection to vaccination and testing to specific religious principles. She pled she "believes that she must treat her body as Temple, and each person has the right to choose what he or she will put into their body, based on free will." Due to this belief, she "strives to control what she puts into her body, and assiduously attempts to keep toxins out of her body." These "firmly held beliefs" connect to her objection to the Covid-19 vaccine, which is "injected" into the body. Additionally, she pled "her religious beliefs do not allow her to provide her DNA or other biological materials by force or coercion" because the "use and possession of her biological materials has been granted to her by her Creator." These alleged beliefs connect to her objection to testing, which "involves transporting her material . . . or mixing her biological materials with serum taken from fetal bovines (calves)." Brokken satisfies her burden of pleading that her alleged religious beliefs conflict with her employer's policy. *Cf. **Vetter v. Farmland Indus.***, 120 F.3d 749, 752 (8th Cir. 1997) (reversing a judgment as a matter of law because "[t]he evidence was in conflict on [the plaintiff's beliefs], and it was for the jury to resolve the conflict").

The district court also rejected Brokken's disparate treatment claims because the County's mandate applied to *all* employees. *See **Shirrell v. St. Francis Med.***

***Ctr.***, 793 F.3d 881, 887 (8th Cir. 2015) ("Circumstances giving rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner."). But "courts generally do not inquire about comparators until summary judgment." ***Cole***, 105 F.4th at 1114–15, *citing* ***Norgren***, 96 F.4th at 1056. "[W]e must grant all reasonable inferences in [plaintiff's] favor and cannot assume at this early juncture that religious discrimination did not occur because one subset of potential comparators also faced disparate treatment." ***Id.*** at 1114. This court reverses and remands the dismissal of Brokken's Title VII claims.

## IV.

For the same reasons, the County argues Brokken failed to plead religious discrimination in violation of the MHRA. "The MHRA makes it unlawful for an employer to 'discharge' or 'discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment' because of 'religion' (among other factors)." ***Ringhofer***, 102 F.4th at 902, *quoting* **Minn. Stat. § 363A.08, subd. 2**. "The same analysis applies to both MHRA and Title VII claims." ***Id.***, *quoting* ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc), *citing* ***Bahr v. Capella Univ.***, 788 N.W.2d 76, 83 (Minn. 2010).

The district court dismissed Brokken's MHRA claim, concluding the MHRA did not include a cause of action for failure to accommodate. Since then, this Court held "the Minnesota Supreme Court would decide that the MHRA provides protection against failures to accommodate religious beliefs." ***Id.*** at 903. *See* ***Integrity Floorcovering, Inc. v. Broan-Nutone, LLC***, 521 F.3d 914, 917 (8th Cir. 2008) ("If the Minnesota Supreme Court has not spoken on a particular issue, we must attempt to predict how the Minnesota Supreme Court would decide an issue and 'may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data.'" (citation omitted)).

Under *Ringhofer*, Brokken can allege a MHRA failure to accommodate claim. Because she plausibly pled religious discrimination in violation of Title VII, she also plausibly pled religious discrimination in violation of MHRA. The district court's dismissal of Brokken's MHRA claim is reversed and remanded.

**V.**

Brokken argues that the County violated Minnesota's Refusal of Treatment statute by requiring her to vaccinate and/or test. The statute, however, does not create a private right of action. It provides: "individuals have a fundamental right to refuse medical treatment, testing, physical or mental examination [and] vaccination . . . ." **Minn. Stat. § 12.39, subd. 1**. Two Minnesota District Courts rejected a private right of action under § 12.39 in the Covid-19 vaccine context. *See* ***Collingham v. City of Northfield***, No. 21-2466, 2022 WL 1558410, at \*2 (D. Minn. May 17, 2022); ***Zarn v. Minn. Dep't of Hum. Servs.***, No. 22-1756, 2022 WL 11227241, at \*3 (D. Minn. Oct. 19, 2022). They relied on state precedent: "A statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." ***Becker v. Mayo Found.***, 737 N.W.2d 200, 207 (Minn. 2007). "A right of action that does not exist at common law cannot be created from regulatory statutes that do not expressly or impliedly identify a statutory right of action." ***Haage v. Steies***, 555 N.W.2d 7, 8 (Minn. Ct. App. 1996). Further, "when a statute expressly provides a particular remedy . . . [plaintiffs] do not have an implied private right to sue." ***Findling v. Group Health Plan, Inc.***, 998 N.W.2d 1, 20 (Minn. 2023), *citing* ***Becker***, 737 N.W.2d at 207.

Section 12.39 does not expressly, nor by clear implication, identify a statutory right of action. In fact, the statute itself has a particular remedy: "a person who willfully violates *a provision of this chapter* . . . is guilty of a misdemeanor and upon conviction must be punished by a fine not to exceed $1,000, or by imprisonment for not more than 90 days." **Minn. Stat. § 12.45** (emphasis added). *See* ***Becker***, 737 N.W.2d at 208 ("The plain language of the statute indicates that the legislature chose

-8-

to impose criminal, but not civil, penalties . . . .").  Because § 12.39 does not create a private right of action, the district court properly dismissed Brokken's claim.

\* \* \* \* \* \* \*

The judgment is affirmed in part, reversed in part, and the case remanded for further proceedings consistent with this opinion.

_____